**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Dr. SHIVA AYYADURAI,<br>*Plaintiff*,<br>*v.*<br><br>MERRICK GARLAND, In His Official Capacity as Attorney General of the United States,<br><br>GARY THOMPSON, District of Columbia, Board of Elections<br><br>*Defendants*. | Case: 1:23−cv−02079<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 6/21/2023<br>Description: Pro Se Gen. Civ. (F−DECK)<br><br>Civil Action No. _________<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**NATURE OF THE ACTION**

1. Plaintiff, American citizen born in India and a candidate for the Presidency of the United States seeks a judgment: 1) declaring his eligibility to serve as President of the United States notwithstanding the "natural born citizens clause" of Article 2 section 1; and, 2) in the alternative declaring that the qualification of President is a non-justiciable political issue to be determined by the voters.






JUN 21 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because this case involves questions of federal law.

3. Venue is proper in the District of the District of Columbia pursuant to 28 U.S.C. § 1391(b).

4. This Court is empowered to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Dr. Shiva Ayyadurai is an American citizen born in 1963, in Mumbai, India.

6. Defendant Merrick Garland, is Attorney General of the United States, and as such is the head of the U.S. Department of Justice, the duties of the Attorney General include issuing authoritative opinions regarding the meaning of the U.S. Constitution and protecting civil rights of all citizens. The Department of Justice further has power and authority to supervise state election compliance with civil rights laws and to enter into consent agreements with states regarding state election law and ballot access.

7. Gary Thompson is Chair of District of Columbia Board of Elections that oversees ballot access for presidential candidates and is responsible for and administers the process of placing candidates on the primary and general election presidential ballots.

## STATEMENT OF FACTS

8. Dr. Shiva Ayyadurai is an American citizen and has been since November 18, 1983.

9. Dr. Shiva Ayyadurai is currently a resident of Massachusetts and has been since September of 1981.

10. Dr. Shiva Ayyadurai earned four degrees from the Massachusetts Institute of Technology (MIT), including a Ph.D. from the MIT Department of Biological Engineering, a Masters from the MIT Department of Mechanical Engineering, a Masters from the MIT Department of Architecture, and a Bachelors from the MIT Department of Electrical Engineering and Computer Science.

11. Dr. Shiva Ayyadurai is an engineer, scientist and entrepreneur who invented the world's first email system in 1978 while working in Newark, NJ; started nine successful high-tech companies in the United States; has been awarded numerous U.S. patents; has published and been cited in over 100 peer-reviewed publications; has written fifteen books; taught at MIT; invited to deliver distinguished lectures in science, engineering and innovation at leading U.S. institutions including the National Science Foundation, National Institutes of Health, MIT, Harvard, to name a few.

12. Dr. Shiva Ayyadurai is recipient of the U.S. Fulbright fellowship, Lemelson-MIT Finalist for Innovation, Westinghouse Science Honors Award Recipient, Nominee for the Presidential National Medal for Technology and Innovation, and American Legion Jersey Boys State.

13. In 2018, Dr. Shiva Ayyadurai ran for United States Senate election in Massachusetts.

14. In 2020, Dr. Shiva Ayyadurai ran for United States Senate election in Massachusetts.

15. In 2023, Dr. Shiva Ayyadurai declared himself to be a candidate for President.

16. Article II, Section 1, Clause 5 of the U.S. Constitution provides the President must be a "Natural Born Citizen;" however, the precise meaning of this phrase has never been adjudicated by the Supreme Court.

17. Article II, Section 1, Clause 5 has popularly been interpreted to mean that a "naturalized citizen" could not serve as President—at least prior to adoption of the Fifth Amendment.

18. Upon information and belief, Dr. Shiva Ayyadurai's campaign will be hampered by a variety of state and federal officials who will refuse to permit ballot access to Dr. Shiva Ayyadurai on the basis of his place of birth.

19. For example, in 2011 the State of New Hampshire informed Abdul Karim Hassan that he would not be permitted to appear on the presidential ballot because he was a naturalized citizen. 1:11-cv-552-JD Filed 11/29/11 (D.N.H. 2011).

20. According to Hassan's filing in 1:11-cv-552, on July 19, 2011 the New Hampshire Secretary of State's office declared that it "will not accept a filing from any person who is not a natural born citizen."

21. On September 2, 2011, however, the FEC brought its expertise into this question and issued an advisory opinion that the Law certainly permits him to run for President, and to collect funds privately, but a different law prohibits him from receiving Federal Matching funds. Thus, there is not a constitutional or legal bar to run for President.

**COUNT ONE: Declaratory and Injunctive Relief that Plaintiff has a First Amendment Right to run for office regardless of "qualification."**

22. Plaintiff incorporates the above as if set forth fully herein.

23. Running for office is a core method bringing matters of public concern to the attention of the public.

24. Given the impact of running for elective office, every citizen possesses a First Amendment Right to campaign for office regardless of any collateral issue about "qualifications."

25. The Supreme Court has consistently held that "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." Eu v. San Fran. Cnty. Dem. Cent. Comm., 489 U.S. 214, 223 (1989)

26. The Federal Election Commission has already issued an advisory Opinion,

27. ADVISORY OPINION 2011-15 (September 2, 2011), stating that there is no provision of federal law that prohibits a naturalized citizen from running for president, regardless of whether or not that person could ultimately serve as president if elected.

28. Advisory Opinion 2011-15 further determined that a "naturalized" citizen was fully entitled under Federal Law to solicit contributions to his campaign.

29. This Advisory Opinion 2011-15 is presumptively entitled to deference by this court, as the FEC was issuing an official opinion in its area of expertise.

30. Given the Fundamental right to run for office and spread one's message, neither the States nor the Federal Government may restrict Plaintiff right to appear on the ballot for President.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

Declaratory and Injunctive relief:

a) Direct the District of Columbia to permit Plaintiff to appear on the ballot in the District of Columbia as a candidate for President;

b) Direct the Department of Justice to issue directives to State and if necessary, enter into

consent agreements with the states' election authorities clarifying that States may not deny Plaintiff access to the ballot based on any alleged lack of qualifications.

**COUNT TWO: Declaratory and Injunctive Relief that discrimination on the basis of status as natural born, as opposed to naturalized citizen, violates the 14th and 5th Amendment guarantee of equal protection.**

31. Plaintiff incorporates the above as if set forth fully herein.

32. The Equal Protection Clause of the Fourteenth Amendment states in relevant part that: No state shall ... deny to any person within its jurisdiction the equal protection of the laws.

33. The Equal Protection Clause of the 14th Amendment prohibits states from discriminating against citizens based on national origin or on status as a naturalized versus a natural born citizen. See McDonald v. City of Chicago, Ill. 130 S.Ct. 3020, 3060 (2010), ("[invidious discrimination is] irreconcilable with the principles of equality, government by consent, and inalienable rights proclaimed by the Declaration of Independence and embedded in our constitutional structure."). See also Adarand v. Pena 515 U.S. 200, 213 (1995), reiterating that, "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality."

34. Accordingly, insofar as any state might attempt to deny ballot access to certain individuals based on national origin or status as naturalized citizens this constitutes invidious, illegal discrimination.

35. The Fifth Amendment requires the federal government to provided equal protection for all in the same way as the 14th Amendment requirement of equal protection applies to the states. Bowling v. Sharp, 347 U.S. 497 (1954).

36. Accordingly, pursuant to the requirements of the Fifth Amendment, the United States may not discriminate based on national origin or status as a naturalized citizen. Schneider v. Rusk, 377 U.S. 163 (1964).

37. "[D]iscrimination aimed at naturalized citizens … creates indeed a second-class citizenship" that is incompatible with the Fifth Amendment. Id.

38. Moreover, a naturalized citizen "becomes a member of the society, possessing all the rights of a native citizen, and standing, in view of the constitution, on the footing of a native." Afroyim v. Rusk, 387 U.S. 253, 262 (1967).

39. Insofar as Article 2 Section 1 might be interpreted to forbid "naturalized citizens" from being President, such a doctrine is entirely incompatible with the guarantee of equality found in the Fifth and Fourteenth Amendments.

40. The Fourteenth Amendment is "the most significant structural provision adopted since the original Framing" and has had profound and extensive effect upon the rest of the Constitution. McCreary County, Ky. v. Am. Civ. Liberties Union of Ky., 545 U.S. 844, 872 (2005).

41. For example, the Fourteenth Amendment permits Congress to authorize suits against state that were previously prohibited by the Eleventh Amendment.

42. In Fitzpatrick v. Bitzer 427 U.S. 445 (1976) the Supreme Court held that "the Eleventh Amendment, and the principle of state sovereignty which it embodies. . . are necessarily limited by the enforcement provisions of §5 of the Fourteenth Amendment." This was true despite the fact that the 14th Amendment did not explicitly mention either the 11th Amendment or suits against states.

43. Just as the Fourteenth Amendment "necessarily limited" earlier provisions of the Constitution, the Fifth Amendment limits earlier provisions of the Constitution that are

incompatible with the Fifth Amendment.

44. Insofar as Article 2 Section 1 appears to permit discrimination based on status as naturalized citizen this is entirely incompatible with the Fifth Amendment guarantee of equal protection.

45. The natural born provision of the Constitution, insofar as appears to permit the invidious national origin discrimination, is irreconcilable with and is, abrogated and implicitly repealed by the Equal Protection Clause, the Citizenship Clause and the Privileges and Immunities Clause of the Fourteenth Amendment as well as the Equal Protection guarantee of the Fifth Amendment.

46. Accordingly, any discrimination against presidential candidates by either the states or the federal government are unconstitutional and null and void.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court grant the following relief:

a) Declare that the natural born provision of the Constitution is irreconcilable with and has been abrogated and implicitly repealed by the Equal Protection guarantees of the Fifth and Fourteenth Amendments;

b) Direct the District of Columbia to permit Plaintiff to appear on the ballot in the District of Columbia as a candidate for president.

c) Direct the Department of Justice to issue directives to State and if necessary, enter into consent agreements with the states' election authorities clarifying that States may not deny Plaintiff access to the ballot based on his status as a "naturalized citizen."

**COUNT THREE: Declaratory and Injunctive Relief that the qualification for President is a non-justiciable political issue that is determined by voters and hence cannot be interfered with by state or federal election officials**

47. Plaintiff incorporates the above as if set forth fully herein.

48. Although Article 2 discussed "qualifications" for president the Constitution does not provide any mechanism for enforcing this provision.

49. Article 2 also fails to define what is meant by a "natural born citizen."

50. Because there is no enforcement mechanism the qualification for President appears to be a non-justiciable political issue that is in effect left up to the voters themselves to determine.

51. A controversy is non-justiciable when it involves a political question and the determination of an issue is vested with the political process. Nixon v. U.S., 506 U.S. 224, 228 (1993) (citing Baker v. Carr, 369 U.S. 186, 217 (1962)).

52. Article 1 of the Constitution provides that "No person shall be a Representative who shall not have attained to the age of twenty five years, and been seven years a citizen of the United States" but further provides that "Each House shall be the judge of the elections, returns and qualifications of its own members." See also Burton v. U.S., 202 U.S. 344, 366 (1906) ("[T]he Senate is made by [the Constitution] the sole judge of the qualifications of its members.

53. Just as Article provides for qualification for elected representatives but leave it up to the political process to adjudicate those qualifications, Article 2 also appears to leave the issue to the political process.

54. No state or federal executive official should be permitted to refuse to allow a candidate to run for office based on an assertion that the candidate does not meet the qualifications because that is an issue that is entrusted to the political process.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court grant the following relief:

a) Declare that the qualification for President is a political question to be determined by the American voters;

b) Direct the District of Columbia to permit Plaintiff to appear on the ballot in the District of Columbia as a candidate for President;

c) Direct the Department of Justice to issue directives to State and if necessary, enter into consent agreements with the States' election authorities clarifying that States may not deny Plaintiff access to the ballot based on any alleged lack of qualifications.

Respectfully submitted,

DR. SHIVA AYYADURAI, PHD
701 Concord Avenue
Cambridge, MA 02138
Telephone: (617) 631-6874
Email: vashiva@cytosolve.com

Dated: June 21, 2023