UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIVA AYYADURAI,<br><br>          Plaintiff,<br><br>    v.<br><br>MERRICK GARLAND,<br>Attorney General, et al.,<br><br>          Defendants. | Civil Action No. 23-2079 (LLA) |

**FEDERAL DEFENDANT'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS**

Merrick Garland, in his official capacity as Attorney General of the United States, submits this reply in further support of the Department of Justice's ("Department's") motion to dismiss. Because the Court lacks jurisdiction over this action brought by *pro se* plaintiff Shiva Ayyadurai, the Court should dismiss the case pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).

In the complaint, Plaintiff, who is foreign born, requests that the Court declare (1) that he is eligible to run for president notwithstanding the "natural born citizen" clause of Article 2, section 1 of the U.S. Constitution; or in the alternative, (2) that "the qualification of President is a non-justiciable political issue to be determined by the voters." Compl. (ECF No. 1) ¶ 1. Plaintiff also asks the Court to order the Department to issue directives to the States advising that they may not deny him access to the ballot based on any alleged lack of qualifications. Compl. (Prayer for Relief).

On February 20, 2024, the Department moved to dismiss the case on the ground that Plaintiff had not shown that he has standing to bring the lawsuit against the Department. Def.'s Mot. to Dismiss (ECF No. 14). Federal courts are courts of limited jurisdiction, and the law

"presumes that a cause lies outside this limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless a plaintiff establishes that the court possesses jurisdiction, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *James v. United States*, 48 F. Supp. 3d 58, 63 (D.D.C. 2014) ("even a *pro se* plaintiff must meet his burden[] of proving subject matter jurisdiction"). Here, the Court "consider[s] all of plaintiff's filings *in toto* when assessing [the] motion to dismiss" because Plaintiff is representing himself, *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), and, like other documents filed *pro se*, Plaintiff's filings are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nonetheless, it is clear from Plaintiff's filings in this case, including his memorandum in opposition and exhibits provided therewith (ECF Nos. 16, 17), that he has not carried his burden of establishing that he has standing to sue the Department.

For this reason, the Court should grant the Department's Rule 12(b)(1) motion and dismiss the case against the Department for lack of jurisdiction.

**ARGUMENT**

The requirement that a plaintiff have standing to sue is rooted in Article III of the U.S. Constitution, which limits federal courts' authority to hear only "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate having suffered an injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013); *see Nat'l Assoc. of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) ("The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability."). Plaintiff has not demonstrated any of these three elements by a preponderance of the evidence, as required.

In this case, Plaintiff has failed to identify any alleged harm traceable to the acts or omissions of the Department of Justice. The focus of Plaintiff's claims is the election procedures run by the District of Columbia and the fifty States, with which the Department of Justice is not involved. *See generally* Compl.; Pl.'s Opp. As for the Department of Justice, Plaintiff only alleges that the Attorney General has the authority to bring enforcement actions for State election compliance and enter into consent agreements with States regarding the same, as well as the authority to "issu[e] authoritative opinions regarding the meaning of the U.S. Constitution and protecting civil rights of all citizens." Opp. at 29. No supporting legal authority is provided for these contentions.[1] Plaintiff does not demonstrate that the Department has in any way caused the injuries of which he complains, nor does he show how the injunctive and declaratory relief he seeks would redress a harm caused by the Department.

Importantly, Plaintiff also fails to demonstrate that he has suffered any cognizable injury at all for purposes of Article III standing, let alone one caused by the Department of Justice. Moreover, the injury that Plaintiff claims was caused by the District of Columbia is not even one that is "actual or imminent," as is required to establish standing.

In the Opposition, Plaintiff summarizes what he characterizes as the steps to get on the ballot in a State or the District of Columbia:

(1) understanding the rules and procedures for the particular State;

(2) acquiring the paperwork of forms and filings for that State;

(3) submitting those forms and filings in a timely manner;

---

[1] Nor does Plaintiff identify any legal authority supporting his contention that the Court can and should grant his requested relief and (1) enjoin the Department of Justice to bring enforcement and other prosecutorial actions against the States and the District of Columbia and (2) enjoin the Department to issue advisory opinions as to state election procedures.

  (4)  collecting the necessary Electors and Nomination Petition Signatures and getting them verified;

  (5)  submitting those Electors and Nomination Petition Signatures to the Secretaries of State for verification; and finally,

  (6)  getting confirmation from the Secretaries of State that the submissions for Electors and number of Nomination Petition Signatures have been fulfilled.

Opp. at 5. By Plaintiff's own admission, the status of Plaintiff's actions to appear on the ballots is currently only between Steps One and Two. Opp. at 5–7. Thus, at the time this suit was filed, the only step Plaintiff had completed was "understanding the rules and procedures for the particular State"—something that any member of the public could accomplish and is not even specific to fulfilling procedures to appear on the ballot.

  Although Plaintiff often alleges in conclusory terms that his injury is "imminent," the Court need not and should not accept such bare legal conclusions as true. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (explaining that a court need not accept inferences that are unsupported by facts alleged in the complaint or that amount merely to legal conclusions). In fact, Plaintiff's claim of imminent injury is belied by other representations in his filings. Plaintiff concedes, for example, that the D.C. Board of Elections will not bar him from the ballot based on the "natural born citizen" clause unless and until he successfully completes each of the five remaining prerequisites for appearing on the ballot—prerequisites that Plaintiff does not dispute the District of Columbia and the States have authority to impose and enforce. *See, e.g.*, Opp. at 15 ("The States cannot disqualify the Plaintiff, a bona fide candidate for President, and deny his access to States' ballots, unless the Plaintiff does not meet specific and reasonable State Elector and Nomination Petition signature requirements."); *id.* at 31 (same).

  Even accepting all reasonable inferences in Plaintiff's favor, it is far from clear that Plaintiff will successfully complete these prerequisites to appear on the ballot. To do so, he would

need to obtain the paperwork once released, timely submit the completed paperwork it in accordance with applicable requirements, collect the necessary Electors and Nomination Petition Signatures and get them verified, submit the signatures to the Secretaries of State for verification, and receive confirmation from the Secretaries of State that the required submissions for Electors and number of Nomination Petition Signatures have been fulfilled. *See* Opp. at 5.

His contention about the District of Columbia barring him from the ballot is merely a conjectural or hypothetical allegation of harm and therefore it cannot constitute an actual or imminent injury for purposes of standing. As Plaintiff concedes, the paperwork from the D.C. Board of Elections will not even be available to him or any other unaffiliated or minor party candidate for President until "June 14, 2024 or slightly before." Opp. at 5-7 (quoting Opp. Ex. D (Aff. of Emily Cross)); *id.* at 23 (same). Moreover, "only when such paperwork is made available" (Step Two), and then timely filed (Step Three), "may a candidate for President begin collecting Nomination Petition Signatures." Opp. at 22. Whether Plaintiff will be able to then "meet the States' specific Elector and Nomination Petition signature requirements" (Step Four), then timely submit them for verification (Step Five), and then receive confirmation from the Secretaries of State that the specific requirements have been fulfilled (Step Six), is far from clear based on the record.

Given that the determination on Plaintiff's qualifications will not occur unless each individual prerequisite is satisfied over the course of the next several months, the most Plaintiff is able to allege is his belief that the District of Columbia is "[p]reparing" to "[i]llegally [d]iscriminate" against Plaintiff and to "[i]llegally [d]isqualify" his candidacy. Opp. at 21. Plaintiff does not claim that he has actually satisfied the procedures for appearing on the ballot and that the District of Columbia has in fact barred him from the ballot based on the "natural born citizen"

clause. His conjectural allegations of harm do not satisfy the injury-in-fact requirement for purposes of Article III standing. *Lujan*, 504 U.S. at 560–61.

Because Plaintiff has not demonstrated by a preponderance of the evidence that he has standing to sue the Department of Justice, the Court should dismiss the action against the Department for lack of jurisdiction. *See Lujan*, 504 U.S. at 561; Fed. R. Civ. P. 12(b)(1), 12(h)(3).

## CONCLUSION

For these reasons, and those in Federal Defendant's Motion, the Court should dismiss this case for a lack of jurisdiction under Rule 12(b)(1).

Dated: April 12, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:       */s/ Christina O'Tousa*
     CHRISTINA O'TOUSA, D.C. Bar #241667
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2437
     christina.o'tousa@usdoj.gov

*Attorneys for the United States of America*