## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHIVA AYYADURAI,

        *Plaintiff*,

    v.

MERRICK GARLAND, *et al.*,

        *Defendants*.

Civil Action No. 23-2079 (LLA)

## MEMORANDUM OPINION

This matter is before the court on motions to dismiss pro se Plaintiff Dr. Shiva Ayyadurai's complaint by Defendants Merrick Garland, Attorney General of the United States, and Gary Thompson, Chair of the District of Columbia Board of Elections.  ECF Nos. 11 & 14.  For the reasons explained below, the court will grant both motions and dismiss the complaint for lack of jurisdiction.

### I.      Background

Dr. Ayyadurai was born in Mumbai, India, and became a naturalized American citizen in November 1983.  ECF No. 1 ¶¶ 5, 8.  He resides in Massachusetts, where he has previously run for state-wide office.  *Id.* ¶¶ 9, 13-14.  In 2023, Dr. Ayyadurai "declared himself to be a candidate for president" in the 2024 election "as an independent, unaffiliated with any political party."  *Id.* ¶ 15; ECF No. 16 ¶ 11.  He has created a website for his campaign, advertised, solicited donations from supporters, engaged volunteers to collect signatures in support of his candidacy, and researched the process to be added to the ballot in all fifty states.  ECF No. 17, at 2, 4; *see generally* ECF No. 16.

Dr. Ayyadurai believes that his "campaign will be hampered by a variety of state and federal officials who will refuse to permit ballot access to [him] on the basis of his place of birth." ECF No. 1 ¶ 18. Specifically, the U.S Constitution directs that only "a natural born" citizen is eligible to hold the office of President. U.S. Const. art. II, § 1, cl. 5. Dr. Ayyadurai thus brought this suit against Mr. Garland, in his official capacity as Attorney General of the United States, and Mr. Thompson, in his official capacity as Chair of the District of Columbia Board of Elections.[1] ECF No. 1 ¶¶ 6-7. He raises three counts in his complaint. First, he argues that the First Amendment guarantees his right to run for the office of President of the United States regardless of "qualifications." *Id.* ¶¶ 22-30. Next, he contends that the provision of the Constitution allowing only natural born citizens to serve as President has been "abrogated and implicitly repealed" by the Fifth and Fourteenth Amendments. *Id.* ¶¶ 31-46. Finally, he maintains that "qualification for President is a non-justiciable political issue that is determined by voters" and thus cannot be "interfered with" by state or federal election officials. *Id.* ¶¶ 47-54. As relief, Dr. Ayyadurai seeks a declaratory judgment that he is eligible to serve as President notwithstanding the natural born citizens clause, and in the alternative, that eligibility for President is a non-justiciable political question that must be determined by the electorate. *Id.* ¶ 1. He also seeks injunctive relief directing BOE to place him on the ballot in the District of Columbia and directing DOJ to ensure that the states do not deny him access to the ballot nationwide. *Id.* at 5-6, 8, 10.

DOJ moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Dr. Ayyadurai lacks standing to bring suit. ECF No. 14. BOE also moved to dismiss

---

[1] Because the lawsuit targets Mr. Garland in his official capacity, the court will refer to that Defendant as the Department of Justice ("DOJ"). The court will do the same for Mr. Thompson, referring to the District of Columbia Board of Elections ("BOE").

for lack of standing under Rule 12(b)(1) and additionally sought dismissal for failure to state a claim under Rule 12(b)(6).  ECF No. 11.

## II.    Legal Standard

The plaintiff bears the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Id.*

When the plaintiff is pro se, as Dr. Ayyadurai is here, the court will "liberally construe" his filings.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see id.* ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, a pro se plaintiff must adhere to the Federal Rules of Civil Procedure.  *Garlington v. D.C. Water & Sewer Authority*, 62 F. Supp. 23, 27 (D.D.C. 2014).  In assessing whether dismissal is warranted, a court considers

3

all of a pro se litigant's filings, including attachments and any opposition filed. *Brown v. Whole Foods Market Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015).

### III. Discussion

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that plaintiffs "must establish that they have standing to sue" and that a case is "ripe" for decision. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). To satisfy the constitutional requirement for standing, a plaintiff must plead: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61). The related doctrine of ripeness also requires the court to "reserve[] judicial power for resolution of concrete and fully crystalized disputes." *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (quoting *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015)). DOJ and BOE argue that Dr. Ayyadurai lacks standing and that the case is not ripe. ECF No. 11, at 5-7; ECF No. 14, at 3-4; ECF No. 19, at 2-5; ECF No. 20, at 2-6. The court agrees.

The first question is whether Dr. Ayyadurai has established an injury in fact as to both standing and ripeness. *Nat'l Treasury Emps. Union*, 101 F.3d at 1427 ("Ripeness . . . shares the constitutional requirement of standing that an injury in fact be certainly impending."). The court construes Dr. Ayyadurai's filings to allege that his injury in fact is an inability to appear on the ballot for President—both in the District of Columbia and nationwide—ECF No. 1 ¶ 18; *see*

*generally* ECF No. 17, and it concludes that this injury is not sufficiently concrete or imminent to confer standing.

With regard to ballot access in the District of Columbia, as BOE and DOJ explain, Dr. Ayyadurai must fulfill several requirements before he can appear on the ballot.  ECF No. 11, at 5-6; ECF No. 20, at 4-5.  In the District of Columbia, candidates for President who are not affiliated with a political party, like Dr. Ayyadurai, must petition for placement on the ballot. 3 D.C.M.R. § 1500.5.  Among other steps, this requires the submission of a petition that "contains the valid signatures of at least one percent . . . of the registered qualified electors of the District," *id.* § 1503.1, and an affidavit personally executed by the candidate, *id.* § 1500.6(b).

Dr. Ayyudarai admits that he has not taken these necessary steps.  ECF No. 17, at 5, 21-22. In his opposition, he lists out the steps to achieve ballot access in the District of Columbia and explains that his campaign is "between" the process of "understanding the rules and procedures" related to getting on the ballot and "acquiring the paperwork of forms and filings."  *Id.* at 5, 22; ECF No. 16-4; ECF No. 16-6.  He further states that a volunteer for his campaign called BOE and asked how to get on the ballot, and a BOE employee explained that the required forms would not be available until June 2024.  ECF No. 17, at 5-6, 23-24; ECF No. 16-6, ¶ 7.  While these actions indicate that Dr. Ayyadurai has a concrete interest in running for President, they provide nothing material to suggest that he will succeed in completing the prerequisites and then be prevented from appearing on the ballot in the District of Columbia because he is not a "natural born" citizen.  As Defendants note, it is entirely possible that other obstacles will befall his campaign first, including an inability to obtain the required number of signatures.  ECF No. 11, at 5-6; ECF No. 20, at 4-5. In this way, Dr. Ayyadurai's injury concerning ballot access in the District of Columbia rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas*

*v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)); *see Hassan v. Fed. Election Comm'n*, 893 F. Supp. 2d 248, 256 (D.D.C. 2012) (dismissing plaintiff's complaint—which sought declaratory judgment related to the natural born citizen requirement—for failure to establish injury in fact, because although the candidate had created a website, advertised, and participated in interviews, he had not shown he was "actually and imminently . . . in a position to be affected by the . . . requirement").  Because Dr. Ayyadurai's claim is "too speculative" for the court to determine whether it "will ever need solving," there is no case or controversy for the court to decide.  *Texas*, 523 U.S. at 302.

With regard to nationwide ballot access, Dr. Ayyadurai argues that he has suffered an injury in fact because Utah and Wyoming have asked him to confirm that he is a natural born citizen as part of their ballot-access process.  ECF No. 17, at 25-27.  However, he does not allege that either state has made a definitive decision that he is ineligible to run for President.  Unless and until that happens, Dr. Ayyadurai has not suffered a sufficiently concrete injury to confer standing.  But even if Utah or Wyoming did render an unfavorable decision on his eligibility, the court would still lack standing because Dr. Ayyadurai has not alleged any causal connection between those decisions and any actions by DOJ.  *Lujan*, 504 U.S. at 560 (explaining that injuries that are the "result [of] the independent action of some third party not before the court" are not traceable to the defendant (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).  While Dr. Ayyadurai contends that DOJ has "power and authority to supervise state election compliance with civil rights laws and to enter into consent agreements with states regarding state election law and ballot access," ECF No. 1, ¶ 6, it is under no obligation to exercise any authority it may have for his benefit, *Voth v. Holder*, 373 F. App'x 78, 78 (D.C. Cir. 2010) (explaining that DOJ has discretion in investigating alleged violations of civil rights laws).  Because his alleged injury is not

"fairly traceable" to DOJ, Dr. Ayyadurai lacks standing to pursue his claim.  *Clapper*, 568 U.S. at 402.

Accordingly, the court concludes that it lacks jurisdiction over Dr. Ayyadurai's claims against DOJ and BOE and must dismiss the suit under Rule 12(b)(1).[2]

### IV.    Conclusion

For the foregoing reasons, the court will issue a contemporaneous order granting the Defendants' motions to dismiss, ECF Nos. 11 & 14, and dismissing this action without prejudice.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: May 7, 2024

---

[2] In his opposition, Dr. Ayyadurai appears to request that the court "sanction Defendants' attorneys" under Federal Rule of Civil Procedure 11 because their motions were based on a "bold-faced lie"—seemingly, the Defendants' assertion that Dr. Ayyadurai's campaign was "theoretical" and insufficiently concrete.  ECF No. 17, at 1-2.  "Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings."  *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017). The court declines to impose sanctions here.  Defendants relied on the allegations in the complaint and did not mislead the court in any respect.